1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TONY ASBERRY,<br>CDCR #P-63853,<br><br>        Plaintiff,<br><br><br><br>     vs.<br><br><br><br><br>JEFFREY BEARD; D. PARAMO;<br>WALKER; SILVA; BENYARD;<br>ALLEMBY; RUTLEDGE;<br>HERNANDEZ; CHOW; NEWTON;<br>TOLEDO; GODINEZ; TAYLOR;<br>MORALES; JANE & JOHN DOES,<br><br>       Defendants. | Civil No.  13cv2573 WQH (JLB)<br><br>**ORDER:**<br><br>**1)  DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND § 1915A(b)(1)**<br><br>**[Doc. No. 31]**<br><br>**AND**<br><br>**2)  DENYING PLAINTIFF'S MOTIONS FOR PHYSICAL LIBRARY USE AND PRELIMINARY INJUNCTIVE RELIEF**<br><br>**[Doc. Nos. 26, 29]** |

**I. PROCEDURAL HISTORY**

   Tony Asberry ("Plaintiff"), a state prisoner currently incarcerated at the Richard

J. Donovan Correctional Facility ("RJD") in San Diego, California is proceeding pro se

in this civil action pursuant to 42 U.S.C. § 1983.

/ / /

In his original Complaint, Plaintiff alleged various RJD officials violated his Eighth Amendment right to be free from cruel and unusual punishment by providing him inadequate medical care after he was transferred there in March 2012 from California State Prison-Sacramento. Plaintiff further alleged RJD officials did so in retaliation for his having filed CDC 602 inmate appeals and a prior civil rights action related to his medical care in the Eastern District of California. *See* Compl. (Doc. No. 1) at 2-14.

On April 22, 2014, the Court granted Plaintiff's Motion to Proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), but simultaneously dismissed his Complaint sua sponte for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A(b) (Doc. No. 15). Specifically, the Court dismissed Plaintiff's claims against Defendants Cate and Paramo because his pleading "contain[ed] virtually no allegation that either of [them] knew of or took any part" in personally causing him constitutional injury. *Id.* at 6-8. The Court further found that while Plaintiff's allegations of chronic lower back pain were sufficiently pleaded to show an "objectively serious medical need" under the Eighth Amendment, *id.* at 10, he failed to allege further facts to show that Defendants Walker, Silva, Denbella, Chow, Newton, or Doe, acted with deliberate indifference to that need. *Id.* at 11-12. Finally, the Court found Plaintiff's allegations of retaliation also failed to state a claim because his Complaint did not contain sufficient factual matter to show any named defendant took adverse action against him because he exercised a constitutional right, that their actions failed to advance a legitimate correctional goal, or that his First Amendment rights were in any way chilled as a result. *Id.* at 12-13. Plaintiff was granted leave to file an Amended Complaint to correct these deficiencies, and cautioned that because an amended pleading supersedes the original, any claims not re-alleged would be considered waived. *Id.* at 13-14.

On June 11, 2014, Plaintiff submitted a First Amended Complaint which deleted reference to Defendants Cate, Denbella, and John Doe, Medical Doctor, but which re-alleged his Eighth Amendment claims against previously-named Defendants Walker,

1   Silva, Chow, and Newton, and alleged additional access to courts claims against newly
2   added Defendants Beard, Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez,
3   Morales, Taylor, and unidentified Jane and John Does (Doc. No. 24).

4        On June 17, 2014, Plaintiff also filed a Motion for Preliminary Injunctive Relief
5   (Doc. No. 26) related to a "new" policy in RJD Fac-B Building 6, which he describes as
6   a "campaign directed at keeping him awake." *Id.* at 8.  On June 26, 2014, Plaintiff also
7   filed a Motion requesting court-ordered "physical library use" (Doc. No. 29).

8        In the interim, on June 24, 2014, Plaintiff filed a Notice indicating his desire to file
9   a Second Amended Complaint (Doc. No. 27), based on claims that he "never received"
10  the Court's April 22, 2014 Order dismissing his original complaint for failing to state a
11  claim, and therefore, he did not have the "opportunity to correct his mistake[s]" when he
12  filed his First Amended Complaint. *Id.* at 2.  Therefore, when on June 30, 2014, Plaintiff
13  submitted a Second Amended Complaint (Doc. No. 31), the Court accepted it for filing
14  as the now-operative pleading in light of the liberality required by FED.R.CIV.P. 15,
15  Plaintiff's pro se status, and his claims of non-receipt as alleged in his June 24, 2014
16  Notice.[1] *See* FED.R.CIV.P. 15(a)(2) ("The court should freely give leave [to amend] when
17  justice so requires."); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("Rule
18  15's policy of favoring amendments to pleadings should be applied with extreme
19  liberality.") (internal quotation omitted); *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir.
20  1987) (applying Rule 15's leave to amend standards "even more liberally to pro se
21  litigants.").

22  / / /
23  / / /

24  _____

25      [1] The Court's docket shows that its April 22, 2014 Order (Doc. No. 15), was served upon
26  Plaintiff by mail at the address currently listed in the docket, and was not returned as
    undeliverable by the United States Post Office. *See In re Bucknum,* 951 F.2d 204, 207 (9th Cir.
27  1991) ("Mail that is properly addressed, stamped, and deposited into the mail is presumed to be
    received by the addressee . . . The presumption can only be overcome by clear and convincing
28  evidence that the mailing was not, in fact, accomplished."); *see also Nunley v. City of Los
    Angeles,* 52 F.3d 792, 796 (9th Cir. 1995) (noting that where court's docket included notations
    that a judgment was mailed and not returned by the post office, its receipt may be assumed).

1    **II.    SCREENING OF SECOND AMENDED COMPLAINT**

2        **A.    Standard of Review**

3        As Plaintiff is aware, notwithstanding his IFP status or the payment of any partial

4    filing fees, the Prison Litigation Reform Act ("PLRA") obligates the Court to review

5    complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are

6    "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated

7    delinquent for, violations of criminal law or the terms or conditions of parole, probation,

8    pretrial release, or diversionary program," "as soon as practicable after docketing." *See*

9    28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Under these statutes, the Court must sua sponte

10    dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state

11    a claim, or which seek damages from defendants who are immune.  See 28 U.S.C. §§

12    1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en

13    banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

14    (discussing 28 U.S.C. § 1915A(b)).

15        All complaints must contain "a short and plain statement of the claim showing that

16    the pleader is entitled to relief."  FED.R.CIV.P. 8(a)(2).  Detailed factual allegations are

17    not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

18    mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

19    (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Determining whether

20    a complaint states a plausible claim for relief [is] . . . a context-specific task that requires

21    the reviewing court to draw on its judicial experience and common sense." *Id.*  The

22    "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see*

23    *also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

24        "When there are well-pleaded factual allegations, a court should assume their

25    veracity, and then determine whether they plausibly give rise to an entitlement to relief."

26    *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000)

27    ("[W]hen determining whether a complaint states a claim, a court must accept as true all

28    allegations of material fact and must construe those facts in the light most favorable to

the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*

## B.      Respondeat Superior and Individual Liability

First, Plaintiff re-names RJD Warden Paramo, and adds Jeffrey Beard, the current Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), as Defendants.[2]  *See* Second Amend. Compl. (Doc. No. 31) at 2.  Plaintiff claims Paramo and Beard are "in charge" of "every facility at RJD" and "all prisons in the State of California," respectively, *id.*, but his Second Amended Complaint, like his original, contains no "further factual enhancement" explaining what either of these Defendants did, or failed to do, which resulted in a violation of his constitutional rights. *See Iqbal*, 556 U.S. at 678.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim).

/ / /

/ / /

---

[2]  Plaintiff's original Complaint named Matthew Cate, Jeffrey Beard's predecessor, as a Defendant, but his claims against Cate were also dismissed on respondeat superior grounds. *See* April 22, 2014 Order (Doc. No. 15) at 6-8.

Therefore, the Court finds Plaintiff's Second Amended Complaint fails to "state a claim for relief that is plausible on its face" as to either Defendant Paramo or Beard. *Iqbal*, 662 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

**C. Inadequate Medical Care Claims**

Second, Plaintiff's Second Amended Complaint repeats his claims of inadequate medical care against Drs. Silva, Chow, Newton and Walker.[3] *See* Second Amend. Compl. at 2-4, 6-7. Specifically, Plaintiff re-alleges that he suffers from chronic lower back pain that "shoots down his legs," and that he is "unable to walk any distance" without "collaps[ing]." *Id.* at 9. Plaintiff admits Drs. Walker, Silva, and Chow authorized and extended his wheelchair use, issued him a mobility-impaired vest, and prescribed physical therapy in response to his repeated requests for medical care via CDCR 7262 "Medical Slips." *Id.* at 6-7. Plaintiff further claims that while he "cannot list each date as they relate to the facts," he admits to have had "(5) MRI exams, including two in contrast, plus one CT scan, a host of X-rays" and to have "undergone nerve testing." *Id.* at 9. Plaintiff concludes Drs. Walker, Silva, Chow, and Newton, who "was much less concern[ed] with Plaintiff's injuries," and who threatened to withdraw his ongoing wheelchair "chrono" based on what "studies have shown," all "did nothing" "to fix [his] lower back," and therefore, were "deliberately indifferent" to his needs. *Id.* at 2, 4.

As Plaintiff was previously apprised, while the government is obliged under the Eighth Amendment to provide medical care to incarcerated prisoners in its custody, only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks omitted).

---

[3] While Plaintiff's original Complaint included inadequate medical care claims against Defendant Denbella and an additional unnamed John Doe doctor, his Second Amended Complaint does not name these parties; therefore, any purported claim against them has been waived. *See* April 22, 2014 Order (Doc. No. 15) at 14-15 (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.").

1   *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment does not

2   guarantee a prisoner the right to the medical treatment of his choice).

3       "A determination of 'deliberate indifference' involves an examination of two

4   elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the

5   defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

6   1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

7   Cir. 1997) (en banc) (citing *Estelle*, 429 U.S. at 104).

8       "Because society does not expect that prisoners will have unqualified access to

9   health care, deliberate indifference to medical needs amounts to an Eighth Amendment

10  violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

11  *citing Estelle*, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat

12  a prisoner's condition could result in further significant injury or the 'unnecessary and

13  wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059 (quoting *Estelle*, 429 U.S. at

14  104). "The existence of an injury that a reasonable doctor or patient would find important

15  and worthy of comment or treatment; the presence of a medical condition that

16  significantly affects an individual's daily activities; or the existence of chronic and

17  substantial pain are examples of indications that a prisoner has a 'serious' need for

18  medical treatment." *Id.*, *citing Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir.

19  1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989).

20      Plaintiff's repeated allegations of chronic lower back pain severe enough to

21  compromise his ability to "walk any distance" without "collaps[ing]" are still sufficient

22  to show an objectively serious medical need. *See* Second Amend. Compl. at 9; *McGuckin*,

23  914 F.2d at 1059; *Garner v. Hazzard*, No. 06-CV-0985, 2008 WL 552872, at *6 (N.D.

24  N.Y. Feb. 27, 2008) (holding that severe back pain, especially if long-lasting, can amount

25  to a serious medical need). Thus, the Court still finds, for purposes of screening pursuant

26  to 28 U.S.C. § 1915(e)(2) and § 1915A, that Plaintiff has a serious medical need requiring

27  attention under the Eighth Amendment. *See McGuckin*, 974 F.2d at 1059.

28      However, even assuming Plaintiff's back pain is sufficiently objectively serious

to invoke Eighth Amendment protection, he was previously directed to include in his amended pleading enough factual content to show that the doctors who treated him and whom he wishes to sue, acted with "deliberately indifference" to his needs.  *Id.* at 1060; *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiff was specifically informed that his amended pleading must contain "factual content," *Iqbal*, 556 U.S. at 678, which demonstrates "(a) a purposeful act or failure to respond to [his] pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (citing *Jett*, 439 F.3d at 1096).  Plaintiff was also cautioned that the requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care, *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122, and that "[a] difference of opinion between a physician and the prisoner–or between medical professionals–concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23.  Finally, Plaintiff was advised he "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  *Snow*, 681 F.3d at 988 (citation and internal quotations omitted).

Plaintiff's Second Amended Complaint, however, contains no facts sufficient to show that Drs. Silva, Chow, Newton, or Walker were deliberately indifferent to his plight by "knowing of and disregarding an[y] excessive risk to [Plaintiff's] health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Instead, he simply repeats his conclusory allegations that while his doctors provided him with a wheelchair, a mobility-impaired vest, multiple diagnostic tests, and physical therapy, they nevertheless acted with "deliberate indifference" because they failed to "fix" his lower back.  *See* Second Amend. Compl. at 2.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action," without the support of factual allegations that state

a claim that is plausible on its face, simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570); *see also Campos v. Srivastava*, No. 1:10-cv-641-LJO-MJS, 2012 WL 1067168, at *3 (E.D. Cal. Mar. 28, 2012) ("[A] doctor is not a warrantor of cures or required to guarantee results.") (citation omitted); *Robinson v. Greer*, No. 89 C 20083, 1989 WL 57783, at *1 (N.D. Ill. Apr. 13, 1989) (finding prisoner failed to state a claim of deliberate indifference under the Eighth Amendment where officials were alleged to have "shuffled" the plaintiff, who complained of "spurs on the vertebrae in his neck, a deteriorating disc in his lower back, and gastric problems of an undetermined nature," between doctors for "various tests and x-rays," and to have provided "different kinds of medications, all to no avail," because "[t]he Constitution does not guarantee a cure for a prisoner's ailments.").

Accordingly, the Court finds that Plaintiff' Second Amended Complaint also fails to state an Eighth Amendment inadequate medical care claim against Drs. Walker, Silva, Chow, and Newton, and that these claims must again be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Resnick*, 213 F.3d at 446.

### D.    Access to Courts Claims

In his original Complaint, Plaintiff alleged to have been denied appropriate medical care at RJD "in retaliation for" his having filed "602's" and a previous civil action in the Eastern District of California "relating to the cause of his lower back injuries." *See* Compl. (Doc. No. 1) at 8. The Court found Plaintiff failed to allege facts sufficient to show that any adverse action had been taken against him *because* he had engaged in any protected conduct, that any defendant's actions failed to advance a legitimate correctional goal, or that his First Amendment rights were chilled as a result. *See* April 22, 2104 Order at 12-13 (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

/ / /

While Plaintiff was granted leave to amend this retaliation claim, his Second Amended Complaint does not appear to allege any medical retaliation whatsoever.

Instead, Plaintiff alleges that a host of newly added Defendants (Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez, Morales, and Taylor), placed him in the Administrative Segregation Unit ("Ad-Seg") on April 17, 2013, based on allegations that he had "submitted . . . anonymous notes (kites)" involving "serious misconduct" and was a "threat to the safety or security of the institution." *See* Second Amend. Compl. at 9, 14. Plaintiff contends Defendants Rutledge, Benyard, Allemby, and Hernandez "knew or should have known" he did "nothing wrong" and "should not have retain[ed] him in Ad-Seg," *id.* at 14, but that they acted together with Defendants Toledo, Godinez, Taylor, and Morales, who inventoried and stored his personal property, including his "legal documents" at the time he was sent to Ad-Seg, in order to deny him "access to courts." *Id.* at 9-12.  Plaintiff admits that while he was granted access to his property while in Ad-Seg in order to "retrieve what he need[ed] to litigate his pending case in the Eastern District," which he identifies as Case No. 2:11-cv-2462-KJM-KJN, his paperwork had been "tossed," some folders were empty, and one was missing. *Id.* at 10-12.  Plaintiff claims that as a result, he "had to litigate his case thr[ough] discovery and other proceedings" without the missing materials. *Id.* at 12.

Prisoners do "have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts." *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996); *accord Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Id.* at 828.

/ / /

/ / /

To establish a violation of the right to access to the courts, however, a prisoner

must allege facts sufficient to show that:  (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result.  *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996).  An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348; *see also Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *Keenan v. Hall*, 83 F.3d 1083, 1093 (9th Cir. 1996). The actual injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including those alleging "total denial of access to a library," or "an absolute deprivation of access to all legal materials." *Lewis*, 518 U.S. at 353 n.4.

Here, while Plaintiff has identified a pending "non-frivolous" civil action which raises a constitutional challenge to the conditions of his confinement, *see Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (to state an access to courts violation, plaintiff must describe the non-frivolous nature of the "underlying cause of action, whether anticipated or lost"), he has nevertheless failed to further allege any act by Defendants Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez, Morales, or Taylor which constitutes an "actual injury" in the pursuit of his Eastern District case. *See Lewis*, 518 U.S. at 348, 355.  For example, while Plaintiff claims some unidentified "legal materials" were lost, he does not offer any further explanation as to what these materials were, why they were relevant to his pending litigation, or how their loss caused him to suffer "actual prejudice with respect to [his] existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

Moreover, a court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc*., 285 F.3d 801, 803 n.2 (9th Cir. 2002)) (alterations in original). Thus, this Court takes judicial notice of docket proceedings in *Asberry v. Cate, et al.*,

1   Eastern Dist. Cal. Civil Case No. 2:11-cv-2462-KJM-KJN, a civil rights action Plaintiff
2   first initiated in September 2011, alleging Eighth Amendment failure to protect and
3   inadequate medical treatment claims against multiple prison officials at California State
4   Prison, Sacramento. *See id.*, March 7, 2013 Findings and Recommendations ("F&Rs")
5   (Doc. No. 97).[4]

6   Plaintiff alleges to have been separated from his "legal materials"–from April 17,
7   2013, when he was first placed in Ad-Seg and his personal property was inventoried and
8   stored, through May 4, 2013, when he was "escorted to R&R for the purpose of allowing
9   [him] to go through his legal boxes to retrieve what he need[ed] to litigate his pending
10  case in the East. Dist. Court," and until June 27, 2013, when he alleges prison officials'
11  investigation resulted in a finding that "none of [his] personal property including legal
12  materials w[]ere missing," and he was forced to "litigate his case thr[ough] discovery and
13  other proceedings without his legal materials." *See* Second Amend. Compl. at 9-12.
14  However, during this time, Plaintiff filed two separate motions in the Eastern District, one
15  seeking injunctive relief, and another seeking similar relief, both challenging the same
16  deprivation of legal materials that he now raises in this action. *See* Eastern Dist. Civil
17  Case No. 2:11-cv-2462-KJM-KJN (Doc. Nos. 103, 135, 153).   In response, U.S.
18  Magistrate Judge Kendall J. Newman ordered a copy of Plaintiff's motions be served
19  upon RJD's Warden, and directed the Warden to "inform the court of the status of
20  Plaintiff's access to his legal materials," and his "missing legal property." *Id.* Doc. Nos.
21  105, 154, 158.  After the Warden complied, Plaintiff's motions were ultimately denied.
22  *See* Doc. Nos. 120, 136, 180.  However, Plaintiff was able to vigorously prosecute his
23  claims thereafter, which is evidenced by the various subsequent motions he filed seeking

24  _____

25      [4] Plaintiff filed Objections to U.S. Magistrate Judge Kendall J. Newman's March 7, 2013
    F&Rs to grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Second
26  Amended Complaint in East. Dist. Civil Case No. 2:11-cv-02462-KJM-KJN on March 25, 2013
    (Doc. No. 98), approximately three weeks *before* he alleges his legal materials were confiscated.
27  Plaintiff also filed a Motion to Amend and/or File a Supplemental Complaint (Doc. No. 99) on
    April 5, 2013, and since that time, has filed more than 25 subsequent motions, requests,
28  objections, and notices in Eastern District Civil Case No. 2:11-cv-02462-KJM-KJN. *See, e.g.,*
    Doc. Nos. 102, 103, 104, 107, 111, 112, 114, 118, 119, 121, 125, 127, 128, 129, 135, 139, 142,
    146, 147, 149, 153, 155, 158, 161, 166, 168, 171, 176, 181, 182, and 183.

an emergency protective order (Doc. No. 121), the appointment counsel (Doc. No. 128), requesting a court-ordered physical and mental health examination (Doc. Nos. 125, 127), compelling discovery (Doc. Nos. 142, 155), and seeking clarification, vacation, and reconsideration of various Court orders (Doc. Nos. 168, 166, 171). Indeed, as of the date of *this* Order, Plaintiff's civil action remains active and pending before the Eastern District of California.

Thus, neither Plaintiff's Second Amended Complaint nor the Eastern District of California's docket in Civil Case No. 2:11-cv-2462-KJM-KJN contain any sufficient factual matter to support the "actual injury" which is required to state a plausible claim for relief based on the denial of Plaintiff's right to access to the courts. *Lewis*, 518 U.S. at 353-55; *Iqbal*, 556 U.S. at 678. Because Plaintiff has not alleged that "a complaint he prepared was dismissed," or that he was "so stymied" by Defendant Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez, Morales, or Taylor's actions that "he was unable to even file a complaint," direct appeal, or petition for writ of habeas corpus that was not "frivolous," *Lewis*, 518 U.S. at 351; *Christopher*, 536 U.S. at 416, his access to courts claims in this action must be dismissed for failing to state a claim upon which section 1983 relief can be granted. *See Lopez,* 203 F.3d at 1126-27; *Resnick*, 213 F.3d at 446.

**E.    Doe Defendants**

Finally, Plaintiff also names "Jane and John Does" as Defendants, but his only basis for liability is that they "work at RJD," "are employed in some official capacity," and that they "violated [his] rights in some form or another." *See* Second Amend. Compl. (Doc. No. 31) at 5. This is plainly insufficient. *See* FED.R.CIV.P. 8(a) (to "state a claim for relief" a pleading "must contain: . . . (2) a short and plain statement of the claim showing the pleader is entitled to relief[.]"); *Iqbal,* 556 U.S. at 678 (noting that while Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (quoting *Twombly*, 550 U.S. at 555); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) ("It [is] incumbent upon [plaintiff] to allege with at least some degree of particularity overt acts which

defendants engaged in" which support his claims.).

### III.   PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

On June 20, 2014, Plaintiff filed a Motion seeking preliminary injunctive relief pursuant to FED.R.CIV.P. 65 (Doc. No. 26).  In this Motion, Plaintiff claims RJD Correctional Captain Stout, Sergeant Ojeda, and Officers Helmick, Fontaine, Virgens, Eaton, and Carrie,[5] all assigned to Facility B, where he remains in Ad-Seg, have been "taking shifts in a campaign directed at keeping him awake" by instituting a "new" security check policy which requires them to use a metal device to make contact with his cell door twice an hour.  *See* Pl.'s Mot. at 3-8.  Plaintiff claims the policy amounts to cruel and unusual punishment as prohibited by the Eighth Amendment, because he "has not been allowed to sleep since 5-19-14," and he seeks a court order "that will allow him to sleep without RJD officials interfering."  *Id.* at 5, 11.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citation omitted).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

To show irreparable harm, the "plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst*., 555 U.S. 488, 492 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, / / /

180-181 (2000)).  In sum, an injunction "may only be awarded upon a clear showing that

---

[5]  None of these RJD officials have been named as Defendants in this case.

the plaintiff is entitled to relief." *Winter*, 555 U.S. at 22.

In this case, Plaintiff's Motion for Preliminary Injunction must be denied because Plaintiff has failed to state a claim against any named Defendant, has not shown that he is "likely to succeed on the merits" of any claim, that "the balance of equities tips in his favor," or that the issuance of an injunction in his case would serve the public interest. *Winter*, 555 U.S. at 20.

In addition, an injunction "binds only the following who receive actual notice of it by personal service or otherwise:  (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with [them]."  FED.R.CIV.P. 65(d)(2).  In general, "[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985).  One "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see also Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916).

Thus, even if Plaintiff could satisfy all the *Winter* factors justifying extraordinary injunctive relief under Rule 65, at this stage of the proceedings the Court simply lacks jurisdiction over *any* party, or any of the RJD officials Plaintiff seeks to enjoin, for they are not, and never have been, named as parties in this case. *Zepeda,* 753 F.2d at 727-28.

## IV.   PLAINTIFF'S MOTION FOR LIBRARY USE

Plaintiff has also filed a Motion requesting that the Court waive S.D. Cal. Local Rule 7.1.f.1's requirement that he file a separate document captioned "Memorandum of Points and Authorities" in support of his motions, or in the alternative, for the Court to

/ / /

direct RJD officials to grant him physical access to the law library in order to conduct

"legal research."  *See* Pl.'s Mot. (Doc. No. 29) at 4.

First, the Court liberally construes all submissions by persons like Plaintiff who proceed without the assistance of counsel, and regularly waives many of its own Local Rules requirements in order to ensure that a pro se litigant's substantive claims are not rejected for technical reasons and are instead resolved on the merits.  *See Professional Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (noting district judge's broad discretion to depart from local rule "where it makes sense to do so and substantial rights are not at stake.").  Indeed this Court has already waived many Local Rule violations when it accepted for filing no fewer than seven of Plaintiff's previous submissions in this case.  *See* Doc. Nos. 4, 22, 23, 25, 28, 30, 32.

Insofar as Plaintiff requests physical access to RJD's law library so that he may conduct "legal research," his Motion must be denied.  In *Lewis*, the Supreme Court expressly disavowed any freestanding constitutional right to law library access for prisoners.  *Lewis*, 518 U.S. at 350-51.  Indeed, even before *Lewis*, the Ninth Circuit held that because "the Constitution does not guarantee a prisoner unlimited access to a law library, . . . [p]rison officials [may] of necessity . . . regulate the time, manner, and place in which library facilities are used."  *Linquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985).

## V.    CONCLUSION AND ORDER

Good cause appearing, **IT IS HEREBY ORDERED** that:

1)    Plaintiff's Motions for Preliminary Injunctive Relief (Doc. No. 26) and for Library Use (Doc. No. 29) are **DENIED**.

2)    Plaintiff's Second Amended Complaint is **DISMISSED** for failing to state an Eighth Amendment inadequate medical care claim as to Defendants Paramo, Beard, Walker, Silva, Chow, and Newton pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1).  Because Plaintiff has been previously apprised of his pleading deficiencies with regard to this claim, further leave to amend is **DENIED** as futile.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2011) (noting district court's

discretion to deny leave to amend where amendment would be futile, especially in case where plaintiff has been granted opportunity but has failed to cure known pleading deficiencies).

3)      The Clerk is **DIRECTED** to terminate this action as to Defendants Cate, Paramo, Denbella,  Beard, Walker, Silva, Chow, and Newton, as well as to all John and Jane Doe Defendants.

4)      Plaintiff's Second Amended Complaint is further **DISMISSED** for failing to state an access to courts claim against Defendants Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez, Morales, and Taylor pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), but *with* leave to amend.  *See Lucas v. Dept. of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) ("Unless it is absolutely clear that no amendment can cure the defect. . . ., a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to the dismissal of the action.").

5)      Plaintiff is **GRANTED** forty five (45) days leave from the date this Order is filed in which to file a Third Amended Complaint which re-alleges his access to courts claims against Defendants Benyard, Allemby, Rutledge, Hernandez, Toledo, Godinez, Morales, and Taylor *only*, which adds no new claims or defendants, and which cures the deficiencies of pleading identified in this Order.  Plaintiff's Third Amended Complaint must also comply with FED.R.CIV.P. 8, and be complete in itself without reference to his prior pleadings.  *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes

/ / /

/ / /

/ / /

/ / /

/ / /

1   the original."); *King*, 814 F.2d at 567 ("All causes of action alleged in an original

2   complaint which are not alleged in an amended complaint are waived.").[6]

3        **IT IS SO ORDERED.**

4   DATED:  August 12, 2014

5                                        *William Q. Hayes*

6                                        **WILLIAM Q. HAYES**
                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

_____

23        [6] Plaintiff is cautioned that should his Third Amended Complaint still fail to state an
    access to courts claim upon which relief may be granted, or should he otherwise fail to comply
24   with this Order, his civil action will be dismissed in its entirety, without further leave to amend,
    and may hereafter be counted as a "strike" against him pursuant to 28 U.S.C. § 1915(g).  *See*
25   *McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996).  "Pursuant to § 1915(g), a prisoner
    with three strikes or more cannot proceed IFP."  *Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th
26   Cir. 2005).  "Strikes are prior cases or appeals, brought while the plaintiff was a prisoner, which
    were dismissed on the ground that they were frivolous, malicious, or failed to state a claim," *id.*
27   (internal quotations omitted), "even if the district court styles such dismissal as a denial of the
    prisoner's application to file the action without prepayment of the full filing fee."  *O'Neal v.*
28   *Price*, 531 F.3d 1146, 1153 (9th Cir. 2008).